# In the United States Court of Federal Claims

No. 18-916 C

(Filed: September 29, 2022)

```
* * * * * * * * * * * * * * * * *  *
                                    *
CAPITOL INDEMNITY CORP.,            *
                                    *
                    Plaintiff,      *
                                    *
         v.                         *
                                    *
THE UNITED STATES,                  *
                                    *
                    Defendant.      *
                                    *
* * * * * * * * * * * * * * * * *  *
```

## RULE 11 MEMORANDUM OPINION AND ORDER

On April 8, 2022, the Court ordered counsel for Plaintiff to show cause as to why sanctions should not be issued against him for alleging in an amended complaint—and then persisting to assert after discovery was conducted—certain factual contentions in this matter. *See generally* ECF No. 80 ("Show Cause Order"). On April 25, 2022, counsel for Plaintiff filed his response. ECF No. 81 ("Pl.'s Rule 11 Resp."). Although the Court in its discretion ultimately refrains from imposing a monetary sanction on Plaintiff's counsel, this memorandum opinion holds that Plaintiff's counsel's representations to the Court regarding the suspension of the prime contractor in this case violated both the letter and spirit of Rule 11(b) of the Rules of the United States Court of Federal Claims ("RCFC").

On August 31, 2021, Plaintiff Capitol Indemnity Corp., a surety and fidelity bonding company, filed a motion for partial summary judgment in this matter. ECF No. 63 ("Pl.'s Partial Summ. J. Mot."). Therein, Plaintiff asserts, *inter alia*, that it is entitled to damages from the government—in the form of recouping an allegedly improperly made progress payment—as an equitable subrogee of a contractor, Redstick, Inc. ("Redstick"). *See generally* Pl.'s Partial Summ. J. Mot.; ECF No. 23 ("Amend. Compl."). Central to a decision on the merits in this case, therefore, is the issue of whether—and if so, when—Plaintiff's rights as a subrogee were triggered. *See Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1312 (Fed. Cir. 2011) ("Equitable subrogation can be used to recover improper payments to a principal obligor only if made after the obligee received notice of the principal obligor's default . . . .").

In support of Plaintiff's equitable subrogation claim, Plaintiff's counsel of record made the following factual representations in Plaintiff's motion for summary judgment:

- On or before January 4, 2016, the Government suspended work by Redstick on the Project and notified Pat Framke and Ron Wills of Capitol of the suspension.[1]

- Although Redstick failed to complete the Project within the mandatory period of performance ending on September 30, 2015; defaulted on the Contract in that and other ways; *and was suspended by the Government on or before January 4, 2016*, Redstick still submitted its Request for Progress Payment No. 9 ("Pay Request 9"), dated January 7, 2016, seeking payment of $230,792.86 for work allegedly done between November 30 and December 25, 2015.[2]

- In the present case, Capitol has argued, and this Court has agreed, that its equitable subrogation rights were triggered by the Government's (Army's) actions starting on December 30, 2015, when **(a)** the Government (Army) informed Capitol that it "should be receiving Payment Bond claims"; **(b)** *the Government (Army) then "suspended Redstick" on January 4, 2016*; and **(c)** the Government (Army) received Capitol's January 13, 2016, request that the Government (Army) issue checks payable to both Redstick and the subcontractors.[3]

Similar factual contentions were made by Plaintiff's counsel in the amended complaint, in briefing on the government's motion to dismiss, and at oral argument on the cross-motions for summary judgment. *See, e.g.*, Amend. Compl. ¶ 29 ("Further, Defendant suspended work by Redstick on or before January 4, 201[6], prior to submission of Contractor Progress Payment Request No. 9 (Gym-09) and copied Pat Framke and Ron Wills of CAPITOL; i.e. Defendant had actual notice of default and communicated such default to CAPITOL.").

  For reasons explained in *Lumbermens* and other cases, Redstick's suspension due to some action or inaction *by Redstick* would almost certainly be material to the Court's merits determination in this matter. A reasonable reading of the factual contentions quoted above—as well as counsel's choice of wording and context—strongly suggests that Redstick "was suspended" on or about January 4, 2016, due to some action or inaction of Redstick. There is no logical reason for Plaintiff to discuss this alleged suspension in the argument section of its summary judgment briefing unless Plaintiff's allegation is that the suspension was due to Redstick's failure to meet contractual obligations and the suspension occurred during the relevant time period. Stated differently, clearly Plaintiff's counsel wanted the Court to believe that Redstick was suspended for fault sometime around January 4, 2016, *see, e.g.*, Pl.'s Partial Summ. J. Mot. ¶ 77 ("the Government (Army) then 'suspended Redstick' on January 4, 2016"), and that the government, by proof of an email dated January 4, 2016, had acknowledged the contractor's default.

  In fact, Judge Firestone, who was previously assigned to this matter, read the suspension allegation just as Plaintiff's counsel intended it to be read and, taking that factual contention as

---

[1] Pl.'s Partial Summ. J. Mot. ¶ 30 (footnote omitted).
[2] *Id.* ¶ 43 (footnote omitted) (emphasis added).
[3] *Id.* ¶ 77 (footnote and citation omitted) (emphasis added).

true (as was proper at that stage of the litigation), denied in part the government's motion to dismiss at least partially due to the misrepresentation of the facts regarding Redstick's suspension. *See Capitol Indem. Corp. v. United States*, 147 Fed. Cl. 371, 380 (2020).  In the portion of her opinion partially denying the government's motion, Judge Firestone reasoned:

> Capitol argues in the alternative that its equitable subrogation rights were triggered by the Army's actions starting on December 30, 2015, when the Army informed Capitol that Capitol "should be receiving Payment Bond claims," *when the Army then "suspended Redstick" on January 4, 2016*, and when the Army received Capitol's January 13, 2016 request that the Army issue checks payable to both Redstick and the subcontractors.  Capitol alleges *these events* occurred before the Army paid Redstick's ninth progress payment, and that, therefore Capitol is entitled to the ninth progress payment under the equitable subrogation doctrine.
>
> While the court agrees with the government that the knowledge of a contractor's failure to make subcontractor payments alone does not constitute adequate notice to establish a claim for equitable subrogation, . . . *here Capitol has alleged more than a failure to pay subcontractors*.  Rather, Capitol alleges that the Army's actions after December 30, 2015, when taken together, are sufficient to state a claim for equitable subrogation for the ninth progress payment.

*Id.* (citations omitted) (emphasis added).  The parties thereafter proceeded to discovery and briefing on summary judgment, where the case now stands.

Yet, even after the benefit of discovery and the additional insight it provided into *why* and *when* work was suspended on the contract, Plaintiff's counsel persisted with his factual contentions (and, thereby, his suggested inferences) related to Redstick being suspended.  These contentions, however, appear to have no objectively reasonable basis in the record.[4]

In his response to the Court's show cause order, which directed Plaintiff's counsel to "explain his evidentiary support," Show Cause Order at 3, Plaintiff's counsel merely restates his client's factual grounds for the government allegedly having notice of Redstick's default on the contract.  *See* Pl.'s Rule 11 Resp. ¶¶ 25–39.  Therein, he states that "Capitol was copied on an

---

[4] Plaintiff's counsel is not saved by the fact that he at times states the suspension occurred *on or before* January 4, 2016.  Yes, technically there was a suspension of work that occurred before January 4, 2016, but that was not a suspension of work due to some fault of Redstick's.  Rather, it was a government-imposed delay of work that ended more than seven months earlier due to hazardous materials at the job site.  *See* Gov.'s Cross-Mot. Summ. J. at 32 n.5.  This "suspension" has no relevance whatsoever to Redstick's alleged default and certainly not as to any default that allegedly occurred around the time the *ninth* progress payment was made.  Moreover, even if counsel asserted that his use of the word "before" somehow makes his argument not a misrepresentation of fact, he also asserted to the Court in his summary judgment briefing that "the Government's (Army's) actions starting on December 30, 2015, when . . . the Government (Army) then 'suspended Redstick' on January 4, 2016."  Although Judge Firestone unknowingly made a similar misstatement of the facts regarding the suspension in her opinion, this inadvertent judicial misstatement likely created a duty on Plaintiff's counsel's part to inform the Court of the facts and, at the very least, obligated him not to restate this misstatement in subsequent briefing.

email transmission dated January 4, 2016, referencing a suspension of the work under the Contract," and that "[t]hereafter, Redstick was terminated for the same failures leading counsel to understand that Redstick was suspended for performance issues." *Id.* ¶¶ 37–38.

The Court does not buy what Plaintiff's counsel is selling.[5] In fact, a simple review of the record shows that Plaintiff's counsel himself quite clearly "underst[oo]d" the facts of the email in a light wholly opposite from that which he asserted in his client's motion before this Court. *See, e.g.*, ECF No. 68-3 at A671 (Plaintiff's counsel, in deposing the Army contracting officer, asks "Now, *as I understand it*, this amendment was to suspend work *due to Government delay*?" and "Do you know why *the Government needed to delay work* under the contract?") (emphasis added); *id.* at A567 (Plaintiff's counsel, in deposing the contract specialist, asks "So this e-mail on January 4th, 2016 *does not indicate* that the Government suspended his work following his failure to perform within the mandatory period of performance?") (emphasis added); *see also* ECF No. 68 ("Gov.'s Cross-Mot. Summ. J.") at 32 n.5 ("Redstick's suspension in fact ended on April 23, 2015, more than seven months before January 4, 2016, at a time and for reasons entirely irrelevant to the issues in this case. *Capitol Indemnity was told this* during the deposition of Mr. Cantrell . . . ." (emphasis added)). For that matter, a simple review of Plaintiff's own pleading similarly shows that he knew better and cannot now claim the level of ignorance to which he believes he is entitled. *See* Amend. Compl. ¶ 14 ("The Contract was amended on February 13, 2015, to suspend work *due to government delay*. By an Amendment of Solicitation/Modification of Contract effective February 13, 2015, work was suspended due to government delay." (citation omitted) (emphasis added)).

The RCFC require more from the advocates appearing before the Court. In relevant part, RCFC 11 provides that

> [b]y presenting to the court a . . . written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

---

[5] Somehow, in Plaintiff's response to the Court's show cause order, Plaintiff's counsel manages to make yet a new and, frankly, dumbfounding misstatement of fact as to one of the *other* grounds on which the previously assigned judge allowed Plaintiff's equitable subrogation claim to proceed. Describing the core of Plaintiff's summary judgment motion, Plaintiff's counsel states in his show cause response that one of Plaintiff's grounds for equitable subrogation was that "Capitol requested the Defendant withhold contract funds from Redstick by correspondence dated January 13, 2016." Pl.'s Rule 11 Resp. ¶ 16. Nowhere, whatsoever, in Plaintiff's amended complaint or summary judgment briefing did it ever assert that it requested the government "withhold contract funds" from Redstick on January 13, 2016. Wholly opposite, in fact. A simple read of Plaintiff's summary judgment motion reflects its allegation that "the Government [] received Capitol's January 13, 2016, request that the Government [] *issue checks payable to* both *Redstick* and the subcontractors." Pl.'s Partial Summ. J. Mot. ¶ 77 (emphasis added); *see also* ECF No. 63-2 at 34 ("Capitol3264") (January 13, 2016, email from Capitol requesting that the Army "issue joint checks payable to both Redstick and their subcontractors").

4

RCFC 11(b).  From even a cursory review of the record in this matter, it does not appear to the Court that Plaintiff's factual assertions have *any* evidentiary support.  Rather, as Plaintiff's counsel himself appeared abundantly aware of during discovery, the contract suspension was a result of factors entirely unrelated to Redstick's performance and did not occur during the relevant time period.

Furthermore, counsel in his response cites to, for the first time, a *complete* version of the email as justification for his interpretation of the facts.  *See* Pl.'s Rule 11 Resp. ¶ 37 (citing "Ex. K (Capitol3289 – 3295)").  Notably, nowhere in Plaintiff's summary judgment briefing did Plaintiff's counsel provide the full version; rather, only by its own review of the government's evidentiary submissions did the Court discover Plaintiff's counsel's sleight of hand.  *See* ECF No. 68-1 at A28–29 (Redstick's representative emailing the Army on January 4, 2016, to ask about the Army's intentions to respond to *Redstick's* requests for equitable adjustment).  Once the email is viewed *in toto*—as Plaintiff's counsel was able to, at the very latest, during discovery—there is no objectively reasonable basis to conclude that "Redstick was suspended for performance issues," or notified as such in the January 4, 2016, email.  Pl.'s Rule 11 Resp. ¶ 38.  Zealous (or "creativ[e]," as Plaintiff's counsel claims, *see* Pl.'s Rule 11 Resp. ¶¶ 21–22) advocacy is permitted; playing fast and loose with the facts is not.

The Court admonishes Plaintiff's counsel that this is no small matter.  His repeated assertions to this Court concerning the suspension of the contract were directly material to a core legal issue in this matter, and they, in fact, appear to have substantially aided his client in surviving the government's motion to dismiss as to the ninth progress payment.  *Capitol Indem. Corp.*, 147 Fed. Cl. at 381 (Plaintiff's allegations "*when taken together*, are sufficient to state a claim for equitable subrogation for the ninth progress payment." (emphasis added)).  Yet, these very same assertions appear (based on the record before the Court, following ample opportunity for discovery) to be entirely disconnected even from *Plaintiff's counsel's* own understanding of such facts.  Plaintiff's counsel had an obligation to, at the very least, correct the record as to his inferences.  *See, e.g.*, Pl.'s Partial Summ. J. Mot. ¶¶ 8, 43 (asserting as "undisputed or indisputable" that "[a]lthough Redstick . . . *was suspended* by the Government on or before January 4, 2016, *Redstick still submitted* its Request for Progress Payment No. 9" (emphasis added)).

Counsel, with Plaintiff's permission, moved to withdraw his contentions concerning the email of January 4, 2016, *see* Pl.'s Rule 11 Resp. ¶ 44, which the Court hereby **GRANTS**.  But the Court notes that the withdrawal occurs well over two years after Plaintiff's equitable subrogation claim to the ninth progress payment survived dismissal.  Ordinarily, this withdrawal of the factually unsupported allegations would be insufficient for Plaintiff's counsel to avoid a monetary sanction, given the apparent impact the allegations had on continuing this litigation; however, Plaintiff's counsel narrowly escapes monetary sanction only because the undersigned did not decide the motion to dismiss and thus cannot say with absolute certainty that the misrepresentation caused the government and this Court to waste time and resources with further proceedings on Plaintiff's equitable subrogation claim.

The Court additionally refrains from imposing a monetary sanction because the government failed to move for RCFC 11 sanctions, despite what was likely a misstatement that

was very obvious to government counsel.  The Court suspects that the twenty-one day safe harbor and the non-mandatory nature of sanctions dissuaded the government from so moving.  It is unfortunate that the current version of RCFC 11—unlike its predecessor (and its former FRCP counterpart), which required *mandatory* sanctions—permits crafty advocates to hold their hand close to the stove for as long as possible, only to draw back when the risk of burn becomes too high.  Congress has grappled with this reality, noting the following in 2017:

> In a strongly worded dissent on the Rule 11 changes, Justice Scalia correctly anticipated that the proposed revision would eliminate a "significant and necessary deterrent" to frivolous litigation, stating "the overwhelming approval of the Rule by the Federal district judges who daily grapple with the problem of litigation is enough to persuade me that it should not be gutted."  Justices Scalia and Thomas properly dissented from the transmittal of the amendments to Rule 11 to Congress, arguing that "[t]he proposed revision would render the Rule toothless, by allowing judges to dispense with sanction, by disfavoring compensation for litigation expenses, and by providing a 21-day 'safe harbor' within which, if the party accused of a frivolous filing withdraws the filing, he is entitled to escape with no sanction at all."

*Lawsuit Abuse Reduction Act of 2017*, H.R. Rep. No. 115-16, at 4 (2017) (footnotes and citations omitted).

Although the Court will not monetarily sanction Plaintiff's counsel, lest there be any doubt, it is the Court's opinion that Plaintiff's counsel violated RCFC 11 by his representations regarding Redstick's "suspension."  Plaintiff's counsel is hereby **ORDERED** to provide a copy of this Memorandum Opinion and Order to an appropriate representative of his client, Capitol Indemnity Corp., and **SHALL** file a notice on the docket certifying his compliance with this order on or before **October 14, 2022**.

Finally, this Memorandum Opinion and Order should serve as notice to all advocates that the Court will strictly enforce the duty of candor embodied in RCFC 11 and will take seriously motions filed thereunder.

**IT IS SO ORDERED.**


                                         s/ Zachary N. Somers
                                         ZACHARY N. SOMERS
                                         Judge